**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **CODY WIGGINS #65117**<br>**MICHAEL VAN DOBBS #15**<br>**DEVIN PHILLIPS #8994**<br>**ROBERT GORDON #65920,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**CHAD YOUKER,** ***in their individual and official capacity, et al.*****,**<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | <br><br><br>**No. 3:26-cv-01253**<br><br>**Judge Trauger**<br>**Magistrate Judge Hill** |

**MEMORANDUM OPINION AND ORDER**

Four inmates in the custody of the Williamson County Jail filed a singular pro se complaint under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5, *inter alia*, alleging violations of their civil rights. (Doc. No. 1).

Each inmate signed the complaint and the following Certification: "I hereby declare under penalty of perjury that I have personally reviewed and signed this document. I further declare that, pursuant to Rule 11 of FRCP, I believe I have a valid legal claim, I am not filing this document for an improper purpose (such as to harass someone), and my claims are supported by evidence or likely will have evidentiary support after a reasonable opportunity for investigation." (*Id.* at 13).

The court must begin with the filing fee.

**I. FILING FEE**

To file a federal civil lawsuit, a plaintiff must submit the civil filing fee or an application for leave to proceed in forma pauperis. In addition, if seeking pauper status, a prisoner-plaintiff

must provide a certified copy of his inmate trust fund account statement for the 6-month period immediately preceding the filing of his complaint as required by 28 U.S.C.§ 1915(a)(2). A plaintiff cannot certify his own statement. The statement must be signed by the jail official who manages inmate trust accounts, which make it "certified." Notarization is not required. A print-out of the inmates' transactions over the past six months should be included.

When there are multiple plaintiffs in a case, each plaintiff is proportionately liable for any fees or costs. *See Talley-Bey v. Knebl*, 168 F.3d 884, 887 (6th Cir. 1999); *In re Prison Litigation Reform Act*, 105 F.3d 1131, 1137 (6th Cir. 1997). Any subsequent dismissal of a Plaintiff's case, even if voluntarily, does not negate that Plaintiff's responsibility to pay his portion of the filing fee. *Fox v. Koskinen*, No. 2:09-cv-160, 2009 WL 2507405, at *1 (W.D. Mich. Aug. 24, 2009) (citing *McGore v. Wrigglesworth*, 114 F.3d 601, 607 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007)).

Initially, only Plaintiff Gordon filed an Application for Leave to Proceed In Forma Pauperis ("IFP Application") (Doc. No. 2).[1] Therefore, by Order entered on September 16, 2026, the court directed Plaintiffs Wiggins, Van Dobbs, and Phillips to submit their portion of the civil filing fee or an IFP Application within 30 days. (Doc. No. 6).

The deadline has passed, and Van Dobbs has not complied with the court's instructions. Neither has he requested an extension of time within which to do so. Thus, it does not appear that he wishes to continue with this action. District courts have the inherent power to sua sponte dismiss an action for want of prosecution "to manage their own affairs so as to achieve the orderly and

---

[1] Gordon handwrote his name followed by "et al." on the IFP Application. (Doc. No. 2 at 1). However, each plaintiff must submit his or her own IFP Application.

expeditious disposition of cases." *Link v. Wabash Railroad*, 370 U.S. 626, 630-31 (1962). Accordingly, Van Dobbs will be dismissed as a plaintiff to this action.

In response to the court's September Order, Phillips and Wiggins filed timely IFP Applications. (Doc. Nos. 11, 14). Phillips also filed a Notice of Change of Address, indicating that he has been released from custody. (Doc. No. 12). Indeed, he filed an IFP Application for non-prisoners, reflecting his change in status. (Doc. No. 11). Courts have recognized the "inherent difficulties of allowing the Plaintiff and [non-prisoners] co-plaintiffs to proceed jointly" and severed their claims. *See e.g., Ellason v. Texas Tech Univ. Health Sciences Ctr.*, No. 5:14-CV-00091-C, 2014 WL 2624752, at *3-4 (N.D. Tex. June 12, 2014); *Horn-Brichetto v. Smith*, No. 3:17-CV-163-JRG-DCP, 2018 WL 11610918, at *1 (E.D. Tenn. Feb. 23, 2018) (denying prisoner's joinder attempt because prisoners' circumstances make joint litigation with non-prisoners "exceptionally difficult"); *Richardson v. Morris County Correctional Facility*, No. Civ.A. 06-2461(DMC), 2006 WL 1582076, at *2 (D. N.J. June 5, 2006) ("Prisoners are not in the same situation as non-prisoner joint plaintiffs; prisoners' circumstances make joint litigation exceptionally difficult.").

Because Phillips is no longer in custody, permitting him to pursue this litigation with other individuals who remain in custody would present inherent litigation difficulties. The most appropriate course of action is to sever his claims and permit him to proceed with his own case.

The court moves now to Plaintiffs Gordon and Wiggins's properly-filed IFP Applications. Under the Prisoner Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(a), a prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). From a review of Plaintiffs' IFP Applications and supporting documentation (Doc. Nos.

2, 14), it appears that both Plaintiffs lack sufficient financial resources from which to pay the full filing fee in advance. Therefore, their IFP Applications (Doc. Nos. 2, 14) are **GRANTED**.

Under § 1915(b), each Plaintiff nonetheless remains responsible for paying his portion of the full filing fee, which is now $175 (with Van Dobbs having been dismissed as a plaintiff and Phillips's claims having been severed). The obligation to pay the fee accrues at the time the case is filed, but the PLRA provides prisoner-plaintiffs the opportunity to make a "down payment" of a partial filing fee and to pay the remainder in installments. Accordingly, Plaintiff Gordon and Wiggins are hereby assessed the $175 **each**, to be paid as follows:

(1) The custodian of each Plaintiff's inmate trust fund account at the institution where he now resides is **DIRECTED** to submit to the Clerk of Court, as an initial payment, "20 percent of the greater of – (a) the average monthly deposits to Plaintiff's account; or (b) the average monthly balance in each Plaintiff's account for the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(b)(1).

(2) After the initial filing fee is fully paid, the trust fund officer must withdraw from each Plaintiff's account and pay to the Clerk of this Court monthly payments equal to 20% of all deposits credited to each Plaintiff's account during the preceding month, but only when the amount in the account exceeds $10. Such payments must continue until the entire amount owed by each Plaintiff is paid in full. 28 U.S.C. § 1915(b)(2).

(3) Each time the trust account officer makes a payment to this court as required by this Order, he or she must print a copy of the prisoner's account statement showing all activity in the account since the last payment made in accordance with this Order and submit it to the Clerk along with the payment. All submissions to the court must clearly identify Plaintiff's name and the case

number as indicated on the first page of this Order, and must be mailed to: Clerk, United States District Court, Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

The Clerk of Court is **DIRECTED** send a copy of this Order to the administrator of inmate trust fund accounts at the Williamson County Jail to ensure that the custodian of each Plaintiff's inmate trust account complies with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If either Plaintiff is transferred from his present place of confinement, the custodian of his inmate trust fund account **MUST** ensure that a copy of this Order follows Plaintiff to his new place of confinement for continued compliance.

## II. MISCELLANEOUS MOTIONS

Plaintiff Wiggins has filed a Motion to Intervene. (Doc. No. 7). This motion will be denied as moot; Wiggins already is a plaintiff in this case.

Plaintiffs Gordon and Wiggins filed a "Motion and Memorandum of Law – Notice of Filing Affidavits." (Doc. No. 8). However, the "motion" does not ask the court to do anything. The filing appears to be Plaintiffs' attempt to add claims to the Complaint. However, to amend the Complaint, Plaintiffs must file an amended complaint (or, after a certain time, a motion for leave to amend the complaint), which Plaintiff Gordon has done. To the extent the "Motion and Memorandum of Law—Notice of Filing Affidavits" requests any relief, the motion (Doc. No. 8) will be denied without prejudice.

Plaintiff Gordon has filed three Motions for Leave to Amend Complaint (Doc. Nos. 9, 13, 20). In the most recently filed motion, Gordon clarifies that he wishes for the "Renewed Amended Complaint" (Doc. No. 20-1) submitted with the third motion to be "the operative complaint." (Doc. No. 20-3 at 1), thus mooting his previously-filed motions to amend. However, only Plaintiff Gordon signed the "Renewed Amended Complaint." Because Gordon and Wiggins are proceeding

pro se, each of them must personally sign any proposed amended complaint. Accordingly, Gordon's motion (Doc. No. 20) will be denied without prejudice because the "Renewed Amended Complaint" lacks the signature of his co-plaintiff Wiggins.[2] Gordon's previously-filed motions to amend (Doc. Nos. 7, 13) will be denied as moot.

## III. MOTIONS FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiff Gordon has filed a "Motion for Preliminary Injunction and Temporary Restraining Order" ("TRO") asking the court to enforce his right to vote, presumably in the upcoming election and beyond. (Doc. No. 19). Wiggins also filed a Motion for a Preliminary Injunction asking the court to grant declaratory relief requiring Defendants to permit Plaintiffs "to vote in national, state and local elections." (Doc. Nos. 15).

A TRO movant must comply with specific procedural requirements. First, "any request for a TRO" must be made by written motion "separate from the complaint." M.D. Tenn. L.R. 65.01(a). Second, because the movant bears the burden of justifying preliminary injunctive relief on the merits, *Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588, 600 (6th Cir. 2014), a TRO motion must be accompanied by a memorandum of law. M.D. Tenn. L.R. 65.01(b). Third, the motion for a TRO must be supported by "an affidavit or a verified complaint" and a proposed order. Fed. R. Civ. P. 65(b)(1)(A); M.D. Tenn. L.R. 65.01(b) (explaining that a motion for a TRO "must be accompanied by a separately filed affidavit or verified written complaint"). Finally, the moving party must

[2] The court notes that the "Renewed Amended Complaint" consists of 124 handwritten pages. (*See* Doc. No. 20-1). The Federal Rules of Civil Procedure require that "[e]ach allegation [of a complaint] must be simple, concise, and direct." Fed. R. Civ. P. 8(d). The lengthy "Renewed Amended Complaint" is far from simple, concise, and direct. The court further notes that the original complaint which is, at this time, the operative complaint does not raise allegations related to Plaintiffs' right to vote. Rather, the complaint rehashes allegations that both Plaintiff have made in other cases currently pending before the court. The "Renewed Amended Complaint" seeks to add claims related to voting.

certify in writing "any efforts made to give notice and why it should not be required." Fed. R. Civ. P. 65(b)(1)(B); *see also* M.D. Tenn. L.R. 65.01(c) (requiring "strict compliance" with this notice provision by pro se moving parties). Plaintiff Gordon has complied with the procedural requirements for filing a TRO motion.

Under Federal Rule of Civil Procedure 65, the purpose of a TRO is to preserve the relative positions of the parties until the court can hold an adversarial hearing for a preliminary injunction. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974); *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226 (6th Cir. 1996) (the purpose of injunctive relief "is to preserve the status quo so that a reasoned resolution of a dispute may be had."). When determining whether to issue a temporary restraining order or a preliminary injunction, the court considers four requirements. The movant must show a likelihood of success on the merits; irreparable harm in the absence of the injunction; the balance of equities favors them; and that public interest favors an injunction. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); S*isters for Life, Inc. v. Louisville-Jefferson Cnty*., 56 F.4th 400, 403 (6th Cir. 2022). Although "[t]he standard for issuing a [TRO] is logically the same as for a preliminary injunction," the "emphasis [is] on irreparable harm given that the purpose of a [TRO] is to maintain the status quo." *ABX Air, Inc. v. Int'l Bhd. of Teamsters*, 219 F. Supp. 3d 665, 670 (S.D. Ohio 2016). Both TROs and preliminary injunctions "are extraordinary remedies which should be granted only if the movant carries [its] burden of proving that the circumstances clearly demand it." *Barron v. PGA Tour, Inc.*, 670 F. Supp. 2d 674, 682 (W.D. Tenn. 2009) (citation omitted).

Plaintiffs seeking a preliminary injunction may not merely rely on unsupported allegations but rather must come forward with more than "scant evidence" to substantiate their allegations.

*See, e.g.*, *Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 417 (6th Cir. 2014); *McNeilly*, 684 F.3d at 614 (upholding denial of preliminary injunction when plaintiff made only a "small showing" of evidence); *Cameron v. Bouchard*, 815 F. App'x 978, 986 (6th Cir. 2020) (vacating preliminary injunction when plaintiffs made no evidentiary showing on some elements of their claim, but instead relied on mere allegations); *United States v. Certain Land Situated in City of Detroit*, No. 95-1118, 1996 WL 26915, at *1 n.1 (6th Cir. 1996) (affirming denial of a preliminary injunction where the district court relied on a lack of evidence to support speculative allegations); *Boulding v. Corr. Med. Servs.*, No. 1:06-cv-811, 2008 WL 2095390, at *1 (W.D. Mich. Feb. 11, 2008), *report and recommendation adopted*, 2008 WL 2095387 (W.D. Mich. May 15, 2008) ("Plaintiff did not marshal any evidence in support of his motion [for a preliminary injunction]. Plaintiff's unsupported allegations do not suffice."). The decision whether to grant a preliminary injunction is a matter within the discretion of the district court. *Tenn. Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 447 (6th Cir. 2009).

The court begins by considering whether Plaintiffs have shown a likelihood of success on the merits.

Wiggins alleges that he is a natural-born citizen of the United States who has never been convicted of a felony. He has been in the custody of the Williamson County Jail since November 11, 2023, as a pre-trial detainee. He alleges that "jail staff" have denied his requests to vote "on the false basis that he 'is not a resident of Tennessee.'" (Doc. No. 15 at 2). According to Wiggins, he is "a resident of Tennessee" because of being detained in Tennessee, receiving his "legal and personal mail" at an address in Tennessee, owning a business in Tennessee, and not owning or controlling interest in real property in another other state. Even if, Wiggins posits, he is not a

resident of Tennessee, jail staff must allow him to vote in "that state's elections . . . he is supposedly a resident of." (*Id.*)

Gordon alleges that he is resident of Franklin, Tennessee, and citizen of the United States and Choctaw Nation and that he has never been convicted of a felony. He alleges that "Defendants have deprived [his] right to vote in every election for three years", including tribal elections. (Doc. No. 19 at 4). Gordon specifically alleges that Defendant Youker prevented Gordon from voting, stating, "You are a half breed Indian" and "Have Jesus cast your ballot." (*Id.* at 7). According to Gordon, Youker "has used intimidation, threats, and coercion to block Phillips, Wiggins, and Gordon['s right] to vote. He does so out of discrimination based on race, religion." (*Id.* at 9).

To state a cognizable claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law. *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006). The constitutional right at issue here centers around Plaintiffs' allegations that Defendants deprived them of their right to vote while detained in the Williamson County Jail.

Voting is a "fundamental political right." *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886). A pretrial detainee's right to vote is protected under the Equal Protection Clause of the Fourteenth Amendment. *O'Brien v Skinner*, 414 U.S. 524 (1974); *Montgomery v. Whidbee*, No. 3:19-cv-00747, 2023 WL 2254531, at *7 (M.D. Tenn. Feb. 27, 2023), *report and recommendation adopted sub nom. Montgomery v. Jamison*, 2023 WL 2484254 (M.D. Tenn. Mar. 13, 2023) (citing *O'Brien v. Skinner*, 414 U.S. 524, 529-30 (1974)) ("People who are otherwise entitled to vote do not lose that right because they are subject to pretrial detention."). The right to vote may nonetheless be "subject to the imposition of state standards which are not discriminatory and which do not

contravene any restriction that Congress acting pursuant to its constitutional powers, has imposed." *Lassiter v. Northampton Cnty. Bd. of Elections*, 360 U.S. 45, 51 (1959). Such standards should not "unduly burden" those who are incarcerated. *Mays v. LaRose*, 951 F.3d 775, 782-83 (6th Cir. 2020); *see also O'Brien,* 414 U.S. at 529-30 (the State cannot impose an "absolute bar to voting" upon pretrial detainees otherwise entitled to vote without running afoul of the Equal Protection Clause). Where the possibility exists that the State might furnish some other alternative means of voting other than the one sought by the detainee, no constitutional violation is established. *O'Brien,* 414 U.S. at 529. "Although Sixth Circuit case law is clear that a pretrial detainee has a Fourteenth Amendment right to vote, the affirmative duties of jail officials to actively assist an inmate in voting is not clear. Courts at the district court level have determined that the Fourteenth Amendment deliberate indifference standard applies, in which case Defendants must essentially avoid recklessly depriving [pretrial inmates] of [their] ability to vote." *Ketzbeau v. Dunn*, No. 2:24-cv-13091, 2026 WL 1980818, at *7 (E.D. Mich. May 26, 2026).

While Gordon generally alleges that Defendant Youker "used intimidation, threats, and coercion to block Phillips, Wiggins, and Gordon['s right] to vote," (Doc. No. 19 at 9), Gordon does not explain how (or provide any evidence of how)[3] Defendants deprived Plaintiffs of their right to vote in past elections or how they are depriving Plaintiffs of the right to vote in an upcoming election. For example, Plaintiffs do not allege that any Defendant delayed the processing of Plaintiffs' absentee ballots. *See Montgomery*, 2022 WL 1008284, at *3 (recognizing that "a reasonable official would have recognized that delaying the processing of a pretrial detainee's absentee ballot would unconstitutionally interfere with the detainee's right to vote. The right is

[3] The recent affidavits filed by Wiggins and Gordon do not address the subject of the TRO or preliminary injunction motions. (*See* Doc. Nos. 17, 18).

thus clearly established.”). Importantly, Plaintiffs do not allege that they attempted to obtain or mail absentee ballots and were prevented from doing either by any Defendant. *Cf. Ketzbeau*, 2026 WL 1980818, at *4 (finding no violation of pretrial detainee Ketzbeau’s Fourteenth Amendment right to vote where “the only credible evidence of record [wa]s that Ketzbeau raised the issue of voting in the August 2004 primary in August, and by that time, Defendants were unable to assist him before the deadline” for obtaining an absentee ballot) (citing *LaCroix v. Dea*, No. 22-12936, 2023 WL 8725047, at *2 (E.D. Mich. May 16, 2023), *report and recommendation adopted sub nom. LaCroix v. Nachtreib*, 2023 WL 8649816 (E.D. Mich. Dec. 13, 2023) (“Jail officials are not deliberately indifferent to a detainee’s rights when they seek to provide assistance in voting but do not succeed.”); *Lewis v. San Mateo Cnty.*, No. C 96-4168, 1996 WL 708594, at *1 (N.D. Cal. Dec. 5, 1996) (finding that jail officials were at most negligent when plaintiff requested voter registration card five days before deadline and received the card one day too late to register)). Neither Plaintiff nor Wiggins alleges that Defendants acted recklessly or with deliberate indifference.

Although Plaintiffs may provide additional allegations in an amended complaint[4] that could result in a different ruling, the record before the court at this time does not establish a likelihood of success on the merits of federal constitutional claims pertaining to voting. No case law in this Circuit suggests that jail officials have an affirmative duty to take steps to enable pretrial inmates in their custody to vote, whether by absentee ballots or otherwise. Plaintiffs do not allege that they requested absentee ballots in a timely manner (or at all) and Defendants failed to provide

[4] As noted above, Gordon has attempted to file an amended complaint, but Wiggins had not signed it so the court denied Gordon’s motion to file the amended complaint.

them or thwarted their timely processing. Having failed to establish the first requirement, Plaintiffs cannot show that they are entitled to a TRO or preliminary injunction.

## IV. CONCLUSION

Based on the foregoing, the court rules as follows:

Van Dobbs is **DISMISSED** as a plaintiff to this action.

The Clerk is **DIRECTED** to open a new case for Phillips and to docket a copy of the Complaint, this Memorandum Opinion and Order, and Phillips's IFP Application in that new case, dated as filed with the date of the original Complaint. Phillips is no longer a plaintiff to this case.

Gordon and Wiggins's IFP Applications are **GRANTED,** and the court has assessed the fees against them herein.

Plaintiff Wiggins's Motion to Intervene (Doc. No. 7) is **DENIED AS MOOT**.

To the extent Wiggins and Gordon's "Motion and Memorandum of Law—Notice of Filing Affidavits" requests any relief, the motion (Doc. No. 8) is **DENIED WITHOUT PREJUDICE**.

Gordon's Motions for Leave to Amend Complaint (Doc. Nos. 9, 13) are **DENIED AS MOOT**. His Renewed Motion for Leave to Amend Complaint (Doc. No. 20) is **DENIED WITHOUT PREJUDICE**.

Gordon's "Motion for Preliminary Injunction and Temporary Restraining Order" (Doc. No. 19) is **DENIED WITHOUT PREJUDICE** as is Wiggins's Motion for a Preliminary Injunction (Doc. No. 15).

In due course by separate order, the court will conduct the required screening of the complaint (or amended complaint, if a proper amended complaint is filed) pursuant to 28 U.S.C. § 1915(e)(2)(B) and Section 1915A

Plaintiffs are reminded that failure to promptly inform the court of any change in address may result in dismissal of the case without further Order. M.D. Tenn. L.R. 41.01(b).

Resources for pro se litigants are available free of charge on the court's website as well as by request to the Clerk's Office so long as the privilege is not abused.

It is so **ORDERED**.

Aleta A. Trauger
United States District Judge